UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use of BROOKLYN IRON WORKS, INC. a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY AND DEPOSIT OF MARYLAND, a New York Company; ZURICH AMERICAN INSURANCE CO., a New York corporation; FEDERAL INSURANCE COMPANY, an Indiana corporation; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; THE CONTINTENTAL INSURANCE COMPANY, a Pennsylvania corporation; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation; EHW CONSTRUCTORS, JV, a Virginia joint venture; JESSE ENGINEERING COMPANY, a Washington corporation; SLSB, LLC an Illinois limited liability company, d/b/a St. Louis Screw and Bolt; and TURNASURE, LLC, a Pennsylvania limited liability company,<br><br>Defendants. | CASE NO. 16-5575 RJB<br><br>ORDER ON MOTIONS TO COMPEL ARBITRATION AND STAY CASE, MOTION TO STAY ARBITRATION, AND MOTION TO DISMISS |

ORDER ON MOTIONS TO COMPEL ARBITRATION AND STAY CASE, MOTION TO STAY ARBITRATION, AND MOTION TO DISMISS- 1

1   This matter comes before the Court on Defendant Jesse Engineering Co. ("Jesse") and Fidelity and Deposit Company of Maryland's ("Fidelity") Motion to Stay and to Compel Arbitration (Dkt. 29), Defendants EHW Constructors, JV ("EHW"), Fidelity, Zurich American Insurance Co. ("Zurich"), Federal Insurance Company, ("Federal Insurance"), Liberty Mutual Insurance Company ("Liberty Mutual"), The Continental Insurance Company ("Continental"), and National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") (collectively referred to as "EHW and the Surety Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative to Stay pending Arbitration (Dkt. 43), Plaintiff Brooklyn Iron Works, Inc.'s ("Brooklyn") Motion to Stay AAA Arbitration Proceedings (Dkt. 49), and EHW and the Surety Defendants' Motion to Stay Jesse's Cross Claim pending Arbitration (Dkt. 52), and Jesse's Motion to Strike (Dkt. 87). The Court has reviewed the pleadings filed regarding the motions and the remaining record.

This dispute arises from construction of a wharf on Naval Base Kitsap-Bangor in Silverdale, Washington. Dkt. 1. Plaintiff and Defendants are various entities involved in the construction or their sureties.

For the reasons provided below, Jesse's motion to strike (Dkt. 87) should be granted, the motions to compel arbitration (Dkt. 29, 43, 52) should be granted, and the entire case stayed. Brooklyn's motion to stay arbitration (Dkt. 52) should be denied and EHW and the Surety Defendants' Motion to Dismiss (Dkt. 43) should be stricken, to be renoted, if necessary.

## I.   FACTS AND PROCEDURAL HISTORY

On or about May 9, 2012, the Department of the Navy contracted with EHW, as the prime contractor, to build the Explosives Handling Wharf #2 for Naval Base Kitsap-Bangor ("project")

ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 2

for $331,372,767.00. Dkt. 14, at 4. As required by the contract with the Navy, EHW obtained a payment bond for the full amount with the Surety Defendants. *Id.*

EHW contracted with Jesse for some of the structural steel for the wharf's cover building for $23,690,636 plus a 9% sales tax. Dkt. 45-1, at 2-28. Jesse acquired a bond from Fidelity for its performance on the project. Dkt. 14. Section 14 of the Purchase Agreement between EHW and Jesse provides:

> **Dispute Resolution**. At the option of Buyer [EHW per the terms of the contract], any controversy or claim arising out of or relating to this PURCHASE AGREEMENT, or the breach thereof ("a Dispute") shall be settled by arbitration in Washington, to be conducted in accordance with the Construction Arbitration Rules of the American Arbitration Association before a single arbitrator . . .

Dkt. 45-1, at 6 (*emphasis in original*).

Jesse contracted with Plaintiff Brooklyn to provide certain of the materials needed for the project, including the direct tension indicator washers ("DTI washers") at issue here. Dkt. 30-1. With some exceptions not relevant here, the Purchase Agreement between Jesse and Brooklyn provided that: "all other terms and conditions of this Purchase Agreement are set forth in the EHW#2 Purchase Agreement and the BROOKLYN PROPOSAL, incorporated in the Purchase Agreement by this reference as though set forth in full, and hereby made binding on Seller and Buyer." Dkt. 30-1, at 5.

Brooklyn purchased the DTI washers from SLSB LL, d/b/a St. Louis Screw and Bolt ("St. Louis") who bought them from the manufacturer, TurnaSure LLC ("TurnaSure"). Dkt. 14.

EHW rejected the TurnaSure DTI washers as non-complaint. Dkt. 30-1, at 8. According to EHW's testing, the TurnaSure DTI washers had "[a]n unacceptable amount of failed tests due to premature collapsing and excessive, unexpected deformation." Dkt. 30-1, at 9. As a result,

ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 3

EHW withheld money from Jesse; and Jesse withheld money from Brooklyn; Brooklyn withheld payment to its downstream suppliers. Dkt. 30-1, at 14.

On May 23, 2016, EHW filed a Demand for Arbitration against Jesse with the American Arbitration Association ("AAA") in accord with their contract's provision on dispute resolution. Dkt. 30-1, at 16. The Demand for Arbitration's claim description reads:

> Breach of contract action. As part of a $24 million steel building supply contract for the Explosive Handling Wharf project at Naval Base Kitsap, Jesse Engineering Co. was to provide [DTI] washers to be used in the bolting system for erecting the building. The washers were to meet certain specific contract requirements. The DTI washers supplied by Jesse (through a series of sub-suppliers) did not meet the specification requirements and failed during required testing. The Jesse supplied DTI washers failed multiple tests before EHW decided to obtain them from a different supplier. This process resulted in a two-month delay in the erection of the building with attendant costs for idled equipment and personnel, costs for testing and replacing the DTI washers, and then acceleration costs to make up the lost schedule time, among other damages.

Dkt. 30-1, at 16. EHW claimed it was damaged in the amount of $2,654,614. *Id.*

On June 15, 2016, Jesse filed an Arbitration Answering Statement [to EHW's Arbitration Demand] and Counterclaim or Joinder/Consolidation Request, seeking joinder of Brooklyn in the arbitration proceedings. Dkt. 30-1, at 19-21.

Brooklyn filed an objection to being joined in the arbitration between EHW and Jesse on June 27, 2016 with the AAA. Dkt. 44-3, at 2. Brooklyn argued that Jesse did not follow the AAA guidelines for joinder or consolidation, did not give it proper notice, did not start a separate arbitration proceeding against it, it did not consent or agree to be joined, and that indispensible parties (TurnaSure and St. Louis) could not be joined. *Id.*

According to the Amended Complaint, on June 27, 2016, Brooklyn notified TurnaSure and St. Louis of the arbitration between EHW and Jesse and "requested [that they] come into the

ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 4

arbitration and defend the claims asserted regarding the defective TurnaSure DTI washers." Dkt. 14, at 6.

On June 29, 2016, EHW amended its Arbitration Demand, adding five claims, and seeking an additional $831,382.14. Dkt. 44-4, at 2-3.

Also on June 29, 2016, Brooklyn filed this case, asserting: (1) Miller Act bond claim, pursuant to 40 U.S.C. § 3133, against the Sureties and EHW, (2) a claim against the bond held by Fidelity (Jesse's surety), and (3) breach of contract against Jesse. Dkt. 1.

Jesse filed an Answer to the Amended Arbitration Demand on July 13, 2016. Jesse again requested that Brooklyn be joined, and made claims against both EHW and Brooklyn. Dkt. 44-5.

On August 9, 2016, Brooklyn filed the Amended Complaint in this case. Dkt. 14. It added claims against TurnaSure and St. Louis under the UCC, for indemnity, and as a third party beneficiary of the warranties made on the washers. *Id.* Brooklyn also added a claim for "stay of arbitration" against all Defendants. *Id.*

On August 26, 2016, Jesse filed the instant motion to compel arbitration and stay the case. Dkt. 29. By agreement of the parties it was noted for consideration on October 21, 2016. Jesse argues that the claims against it and Fidelity should be compelled to arbitration and the case stayed pending that proceeding. Dkt. 29. EHW and the Sureties join in Jesse's motion. Dkt. 67. TurnaSure and St. Louis do not oppose any of the pending motions, including this one. Dkt. 58. Brooklyn opposes the motion. Dkt. 65.

On September 29, 2016, EHW and the Sureties filed their motion to dismiss, or in the alternative, to stay pending the arbitration. Dkt. 43. They assert that Brooklyn's claim against EHW and the Sureties, which is based on the Miller Act, should be dismissed with prejudice because as a supplier to a supplier, Brooklyn has no right to a Miller Act claim. *Id.* In the

ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 5

alternative, it argues that the case should be stayed pending the arbitration. Brooklyn also opposes this motion. The other parties do not.

On October 3, 2016, Jesse filed its Answer to the Amended Complaint, and asserts: (1) a counterclaim against Brooklyn for breach of contract, (2) a claim against International Fidelity (Brooklyn's bond holder), (3) a breach of contract cross claim against EHW, (4) and a Miller Act claim against the Sureties. Dkt. 47.

On October 6, 2016, Brooklyn filed its Motion to Stay AAA Arbitration Proceedings. Dkt. 49. It argues that this Court should enter an order "staying arbitration proceedings until this matter is fully and finally resolved." *Id.*

Also on October 6, 2016, EHW and the Sureties filed their motion to stay Jesse's cross claim pending arbitration. Dkt. 52. No party, including Jesse, opposes this motion. *See* Dkts. 58 and 61. The motion should be granted and no further analysis in required.

On October 10, 2016, St. Louis filed an Answer to the Amended Complaint, and asserts a breach of contract/UCC counterclaim against Brooklyn, breach of warranty cross claims against TurnaSure, indemnity cross claims against TurnaSure, and contribution cross claims against TurnaSure. Dkt. 57.

On October 20, 2016, the AAA notified counsel that "Jesse has met the requirement for brining a joinder motion" against Brooklyn, and that an arbitrator will determine whether the motion will be granted. Dkt. 84.

In response to Brooklyn's reply to the Motion to Stay the AAA Proceedings, Jesse and Fidelity filed a Surreply, moving to strike arguments raised for the first time in Brooklyn's reply. Dkt. 87. Specifically, Jesse and Fidelity move to strike Brooklyn's argument that Jesse has waived its right to arbitration by litigating in this case. *Id.*

ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 6

1   This opinion will first consider Jesse and Fidelity's motion to strike (Dkt. 87), then Jesse
2   and Fidelity's motion to compel arbitration (Dkt. 29), then Jesse, Fidelity, EHW and the
3   Sureties' motions to stay this case pending arbitration (Dkts. 29 and 43), then Plaintiff
4   Brooklyn's motion to stay the arbitration proceedings (Dkt. 49), and lastly, EHW and the
5   Sureties' motion to dismiss (Dkt. 43).

## II.   DISCUSSION

### A.  MOTION TO STRIKE

Jesse's motion to strike the new arguments made in Brooklyn's reply to its motion to stay the arbitration proceedings (Dkt. 87) should be granted. Brooklyn raises the issue of whether Jesse has waived its right to demand arbitration for the first time here. Issues raised for the first time in reply briefs are not considered. *Cedano-Viera v. Ashcroft,* 324 F.3d 1062, 1066 n.5 (9th Cir. 2003).

Moreover, even if the argument were to be considered, it has little merit. "A party seeking to prove waiver of a right to arbitrate must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). As the party arguing that Jesse waived its right to arbitrate, Brooklyn has "a heavy burden of proof." *Id.* "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc*., 791 F.2d 691, 694 (9th Cir. 1986).

Brooklyn has not carried its burden to show that Jesse waived its right to arbitrate in the circumstances here. Defending itself in this case is not inconsistent with the right to arbitrate,

particularly where Jesse has been attempting to arbitrate the parties' dispute and started that process before this case was filed by Brooklyn. Further, Brooklyn has not shown that it was prejudiced. Waiver has not been shown.

### B. JESSE AND FIDELITY'S MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA"), 9 U.S.C., established a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). Creating "a body of federal substantive law of arbitrability," the FAA applies to "any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA applies to any "written provision in . . . a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Pursuant to the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in the original) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130. If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss the matter. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

1. Existence of Agreement to Arbitrate?

Although the FAA promotes a clear policy favoring agreements to arbitrate disputes, the court must make a threshold determination as to whether an agreement exists. *See, e.g.*, *Simula*, 175 F.3d at 719–20; *Lowden,* 512 F.3d at 1217.  "[I]n assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)(*internal citations omitted*)(applying California law to determine whether an arbitration clause was unenforceable due to procedural and substantive unconscionability); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008)(applying Washington law to determine if arbitration clause was unenforceable).

Parties do not dispute that there is an agreement to arbitrate disputes in the contract between EHW and Jesse.  Further, Brooklyn does not dispute that there is an agreement to arbitrate disputes in its contract with Jesse.  The contract between Brooklyn and Jesse provides that, "all other terms and conditions" of the contract "are set forth in the EHW#2 Purchase Agreement . . . . incorporated . . . by this reference as though set forth in full, and hereby made binding on Seller and Buyer."  Dkt. 30-1, at 5.  There is an agreement to arbitrate disputes between Jesse and Brooklyn.

2. Coverage of the Dispute?

The disputes raised in this case between EHW and Jesse are squarely covered by the arbitration agreement in their contract.  Parties do not contest this.

The disputes at issue in this case between Jesse and Brooklyn are also covered by their agreement to arbitrate.  The arbitration clause covers "any controversy or claim." In the Amended Complaint, Brooklyn makes a claim for breach of contract against Jesse related to the

1  TurnaSure DTI washers. Dkt. 14. Further, according to the Amended Complaint, at dispute is

2  whether EHW, the Sureties, and/or Jesse are "obligated to pay [Brooklyn] for the materials

3  [Brooklyn] provided for the Project and for which Jesse failed to make payment." Dkt. 14, at 7-

4  8. The Amended Complaint also seeks indemnification from St. Louis and TurnaSure "to the

5  extent [Brooklyn] is adjudged liable to and/or pays to EHW and/or Jesse for the claims asserted

6  regarding the TurnaSure DTI washers." *Id.*, at 9. Jesse asserts a counterclaim against Brooklyn

7  regarding the washers. The arbitration clause between Jesse and Brooklyn covers the claims and

8  counterclaims they have asserted against one another here.

9     Brooklyn's discussion of the procedures in the arbitration, including whether it can be joined

10 in the arbitration case between EHW and Jesse do not change the result. The claims and

11 counterclaims between Jesse and Brooklyn must be arbitrated. Further, Brooklyn's argument

12 that not all parties can be joined in the arbitration is not material as to whether the claims with

13 Jesse must be compelled to arbitration. Under the FAA, "an arbitration agreement must be

14 enforced notwithstanding the presence of other persons who are parties to the underlying dispute

15 but not to the arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

16 460 U.S. 1, 20 (U.S. 1983).

17    Jesse's Motion to Compel Arbitration (Dkt. 29) should be granted.

18 **C. MOTIONS TO STAY THIS CASE PENDING ARBITRATION**

19 Under § 3 of the FAA,

20    If any suit or proceeding be brought in any of the courts of the United States upon
      any issue referable to arbitration under an agreement in writing for such
21    arbitration, the court in which such suit is pending . . . shall on application of one
      of the parties stay the trial of the action until such arbitration has been had . . . .
22

23    Accordingly, the claims, cross claims, and counterclaims asserted between EHW and Jesse

24 and Jesse and Brooklyn must be stayed pending arbitration between those parties.

ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 10

1   All parties except the Plaintiff either move to stay the remaining portions of the case, or at
2   least do not oppose a stay.

3   The U.S. Supreme Court noted that "[i]n some cases, . . . it may be advisable to stay litigation
4   among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone*
5   *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23 (U.S. 1983). The decision to stay
6   litigation pending the outcome of arbitration is a decision "left to the district court . . . as a matter
7   of its discretion to control its docket." *Id.* In determining whether a stay is appropriate, courts
8   weigh the (1) "hardship or inequity which a party may suffer in being required to go forward,"
9   and the (2) "orderly course of justice measured in terms of the simplifying or complicating of
10  issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v.*
11  *Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

12  These considerations favor a stay in this case. Brooklyn, the only party opposing the stay,
13  makes no showing of any possible damage that may result to it as a result of the stay, particularly
14  because it (and all parties) are claiming interest compounded over time on the amounts they
15  allege they are owed. Forcing the parties to go forward may create hardships on the moving
16  parties. Further, "the orderly course of justice, measured in terms of simplifying the issues,
17  proof and questions of law, which could be expected from the stay" is favored by this stay. One
18  of the key questions in this case and in the arbitration proceedings is whether the TurnaSure DTI
19  washers were defective. Another related question is whether EHW could rejected the washers as
20  non-compliant and then withhold payment to its downstream supplier[s] as a result. Many of the
21  claims, counterclaims, and cross claims asserted in this case will be at issue in the arbitration and
22  are based on the same operative facts of the claims asserted in this case. If both this case and the
23
24
ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 11

arbitration are allowed to proceed at the same time, there is a risk of inconsistent results. Issues, proof and questions of law will be greatly simplified if the case is stayed pending the arbitration.

This case should be stayed pending completion of the arbitration proceedings between EHW, Jesse, and Brooklyn, or if there are separate proceedings, between EHW and Jesse and Jesse and Brooklyn. Other courts are in accord. *See Lee & Rua Co. v. Great Am. Ins. Co.*, 2008 WL 1868633, at 2 (W.D. Wash April 23, 2008)(ordering arbitration for contracts claims and staying Miller Act claims in construction case)(citing *United States ex rel. MPA Constr. v. XL Specialty Ins. Co.*, 349 F.Supp.2d 934 (D.Md.2004) (staying a Miller Act claim against a surety while ordering plaintiff subcontractor into arbitration with the general contractor for the underlying claim); *United States ex rel. Newton v. Neumann Caribbean Int'l Ltd.*, 750 F.2d 1422 (9th Cir.1985) (finding no abuse of discretion in a district court's orders for a subcontractor and contractor to submit to arbitration and for a stay of the Miller Act proceeding pending completion of the arbitration)).

Parties should file a joint report regarding the status of the arbitration proceedings on or before May 12, 2017.

**D. PLAINTIFF BROOKLYN'S MOTION TO STAY ARBITRATION PROCEEDINGS**

Brooklyn's Motion to Stay the AAA Arbitration Proceedings (Dkt. 49) should be denied. Brooklyn fails to cite any authority that this Court may order a stay of arbitration proceedings being conducted in accord with arbitration agreements. Brooklyn's citation to authority about the court's inherent power to stay its own cases are unhelpful.

**E. EHW and the SURETY DEFENDANTS' MOTION TO DISMISS**

1  EHW and the Surety Defendants' motion to dismiss the Miller Act claims Brooklyn asserts

2  against them (Dkt. 43) should be stricken, to be noted again, if appropriate, after the stay in this

3  case is lifted.

4  **F. CONCLUSION**

5  Jesse's motion to compel arbitration should be granted.  There is a valid agreement to

6  arbitrate between Jesse and Brooklyn (which was not waived), and the agreement covers the

7  disputes at issue.  Jesse and Brooklyn should proceed to arbitration in accord with the applicable

8  law.

9  The entire case should be stayed pending completion of all the arbitration proceedings.

10  Parties should file a joint report regarding the status of the arbitration proceedings on or before

11  May 12, 2017.  EHW and the Surety Defendants' motion to dismiss the Miller Act claims

12  Brooklyn asserts against them should be stricken, to be noted again, if necessary, after the stay is

13  lifted.

14  **III.   ORDER**

15  It is **ORDERED** that:

16  • Defendant Jesse Engineering Co. and Fidelity and Deposit Company of Maryland's

17    Motion to Strike (Dkt. 87) **IS GRANTED**;

18  • Defendant Jesse Engineering Co. and Fidelity and Deposit Company of Maryland's

19    Motion to Stay and to Compel Arbitration (Dkt. 29) **IS GRANTED**;

20  • Defendants EHW Constructors, JV, Fidelity, Zurich American Insurance Co., Federal

21    Insurance Company, Liberty Mutual Insurance Company, The Continental Insurance

22    Company, and National Union Fire Insurance Company of Pittsburgh, PA's Motion

23

24
ORDER ON MOTIONS TO COMPEL
ARBITRATION AND STAY CASE, MOTION TO
STAY ARBITRATION, AND MOTION TO
DISMISS- 13

to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 43) **IS STRICKEN**, their Alternative Motion to Stay pending Arbitration (Dkt. 43) **IS GRANTED**;

- Defendants EHW Constructors, JV, Fidelity, Zurich American Insurance Co., Federal Insurance Company, Liberty Mutual Insurance Company, The Continental Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA's Motion to Stay Jesse's Cross Claim pending Arbitration (Dkt. 52) **IS GRANTED**;

- Plaintiff Brooklyn Iron Works, Inc.'s Motion to Stay AAA Arbitration Proceedings (Dkt. 49) **IS DENIED**;

- This case **IS STAYED**; and

- Parties **SHALL FILE** a joint report regarding the status of the arbitration proceedings on or before **May 12, 2017**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 27th day of October, 2016.

_____
ROBERT J. BRYAN
United States District Judge

ORDER ON MOTIONS TO COMPEL ARBITRATION AND STAY CASE, MOTION TO STAY ARBITRATION, AND MOTION TO DISMISS- 14